IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**WILLIE NESBY, #B83573,**

      **Plaintiff,**

v.

**STEVE INGRAM, OFFICER SCHMANSKI, CITY OF DUQUOIN,**

      **Defendants.**

Case No. 18-cv-02145-SPM

## MEMORANDUM AND ORDER

**McGLYNN, District Judge:**

Pending before the Court is a Motion for Summary Judgment (Doc. 61) filed by Defendants Steve Ingram ("Ingram"), Officer Schmanski ("Schmanski") and City of DuQuoin ("DuQuoin"), collectively known as defendants. For the reason's set forth below, the Court GRANTS the Motion for Summary Judgment.

## PROCEDURAL HISTORY

On December 5, 2018, plaintiff Willie Nesby ("Nesby"), filed his complaint pursuant to 42 U.S.C. § 1983 against David Searby, Steve Ingram, Officer Swallers, Kellerman, Schmanski, Bahm, City of DuQuoin, Drug Task Force and Perry County Sheriff Department (Doc 1). On April 3, 2019, a merit review was conducted pursuant to 28 U.S.C. § 1915A (Doc. 14). At that time, the complaint was divided into eight counts, with the Court determining that Nesby could proceed on the following four (4) counts

against Ingram, a sergeant with the City of DuQuoin Police Department and David Searby, the Perry County State's Attorney, in their individual capacity only[1]:

| | | |
|---|---|---|
| Count 1 | | Fourth Amendment claim against Defendants for arresting and detaining Plaintiff without probable cause on drug charges based in falsified documents and fabricated evidence; |
| Count 4 | | Civil conspiracy claim against Defendants for conspiring to falsify documents, fabricate evidence, and arrest, detain, and prosecute Plaintiff on drug charges; |
| Count 6 | | State law malicious prosecution claims against defendants for falsifying documents and fabricating evidence to arrest, detain, and prosecute Plaintiff for drug crimes; and, |
| Count 7 | | State law intentional infliction of emotional distress claim against Defendants for extreme and outrageous conduct by falsifying documents and fabricating evidence to arrest, detain, and prosecute Plaintiff for drug crimes causing Plaintiff extreme emotional distress (Doc. 9). |

On May 29, 2019, Searby filed his answer and affirmative defenses (Doc. 16). On June 3, 2019, Ingram filed his answer (Doc. 17).

On April 10, 2020, Nesby was granted leave to file his amended complaint (Doc. 42). A second merit review was then conducted pursuant to 28 U.S.C. § 1915A, which allowed Nesby to amend the previous claims as follows:

| | | |
|---|---|---|
| Count 1 | | Fourth Amendment claim against Ingram, Searby and Schmanski for arresting and detaining Nesby without probable cause on drug charges based on falsified documents and fabricated evidence; |
| Count 4 | | Civil conspiracy claim against Ingram, Searby and Schmanski for conspiring to falsify documents, fabricate evidence, and arrest, detain, and prosecute Nesby on drug charges; |

---

[1] Claims were originally identified as Counts 1-8; however, at Merit Review, only Counts 1, 4, 6, and 7 were sustained.

> Count 6     State law malicious prosecution claim against Ingram, Searby, Schmanski and the City of DuQuoin for falsifying documents and fabricating evidence to arrest, detail and prosecute Nesby for drug crimes;
>
> Count 7     State law intentional infliction of emotional distress claim against Ingram, Searby, Schmanski and City of DuQuoin by extreme and outrageous conduct by falsifying documents and fabricating evidence to arrest, detain, and prosecute Plaintiff for drug crimes causing Plaintiff extreme emotional distress[2] (*Id.*).

At that time, the Court also allowed Nesby to add Count 3, which stated:

> Count 3     Fourteenth Amendment claim of discrimination against Ingram, Searby, and Schmanski for arresting, detaining, and prosecuting Nesby because of his race[3] (*Id.*).

In other words, Counts 1, 3 and 4 are proceeding against Ingram, Searby, and Schmanski while Counts 6 and 7 are proceeding against Ingram, Searby, Nesby, and the City of DuQuoin (*Id.*). One of the main differences was allowing Nesby to proceed against Schmanski and City of DuQuoin, who were both dismissed without prejudice following review of underlying complaint.

On April 17, 2020, Searby answered Nesby's amended complaint and asserted affirmative defenses of absolute prosecutorial immunity, qualified immunity, collateral estoppel, jurisdiction, sovereign immunity, local government and governmental employees tort immunity act, and the statute of limitations (Docs. 46). On that same date, Ingram also answered Nesby's amended complaint and asserted the doctrine of qualified immunity (Doc. 47). On June 15, 2020, both Schmanski and DuQuoin filed their respective answers and affirmative defenses (Doc 53).

---

[2] The numbering of the counts is based upon what was upheld following the merit review.
[3] The Court allowed the addition of Count 3, so plaintiff is now proceeding on Counts 1, 3, 4, 6, and 7.

On November 18, 2020, Ingram, Schmanski and DuQuoin filed their motion for summary judgment along with supporting memorandum of law (Docs. 61-62). Specifically, Ingram and Schmanski argued probable cause to arrest Nesby, which negates liability for DuQuoin as liability cannot be imputed (*Id.*). These defendants also filed a statement of uncontroverted material facts in support of motion for summary judgment (Doc. 63).

On that same date, Searby also filed a motion for summary judgment and supporting memorandum of law arguing lack of evidence and absolute prosecutorial immunity (Docs. 64-65). On December 15, 2019, Nesby filed a consent motion to dismiss Searby, which was granted and which resulted in the termination of the motion for summary judgment as moot (Docs. 68-69).

On January 4, 2021, Nesby filed his response and memorandum in opposition to motion for summary judgment filed by Ingram, Schmanski and DuQuoin, wherein he contested their claims of probable cause (Doc. 70). Nesby also filed a response to their statement of uncontroverted material facts, claiming additional facts in support of his opposition (Doc. 71). On January 19, 2021, defendants filed a reply to Nesby's response to the motion summary judgment motion and also filed a response to Nesby's additional statement of facts, reiterating that the evidence was clear and undisputed, and that there were no material facts at issue (Docs. 72, 73).

## STATEMENT OF FACTS[4]

Plaintiff Willie Nesby("Nesby") is a black man who was charged in Perry County, Illinois via case 2016-CF-21 with two Class X felonies for knowingly delivering to a confidential source, "Tori Black", cocaine while in Perry County Public Housing on January 6, 2016 and January 8, 2016 (Doc. 72, ¶ 1). During all relevant time periods, Ingram and Schmanski were police officers with the City of DuQuoin Police Department (Doc. 72, ¶ 2).

Nesby resided with Chelse McManus ("McManus") at her residence in the Perry County Public Housing Authority project, which was predominantly occupied by white residents (Doc. 72, ¶ 3). In July 2015, McManus reconnected with Dustin Keibler ("Keibler"), her former babysitter (Doc. 72, ¶ 4). After renewing contact, Keibler bought "pot" from McManus approximately once a week (Doc. 72, ¶ 5).

In November 2015, Keibler began working as a confidential informant ("CI") with the Perry County Drug Task Force and was assigned the alias "Tori Black"[5] ("CI Black") (Doc. 72, ¶¶ 7-9). From November 3, 2015 to December 11, 2015, Nesby was incarcerated on a parole revocation (Doc. 72, ¶ 10). On November 30, 2015, Keibler, while working as CI Black, purchased cannabis from McManus at her residence (Doc. 72, ¶ 11). Following that purchase, Ingram requested authorization for the use of an eavesdropping device regarding McManus (Doc. 72, ¶ 12). In support of his request, Ingram prepared an affidavit that Keibler signed as "Tori Black" (Doc. 72, ¶ 13, 16).

---

[4] In an effort to exclude immaterial and irrelevant facts, this Court has prepared its own Statement of Facts based upon the briefs and exhibits provided by the parties herein.
[5] Dustin Keibler is used interchangeably with Tori Black. Keibler knew McManus, but was working as Confidential Informant Tori Black during the relevant drug purchases.

After Ingram obtained the order authorizing the eavesdropping device, Keibler arranged for another purchase of cannabis from McManus for December 8, 2015 (Doc. 72, ¶ 23). On that date, McManus instead sold Keibler a substance presumed to be cocaine (*Id.*). Keibler arranged for another purchase of cocaine from McManus for December 14, 2015, by which time Nesby was back to residing with McManus (Doc. 72, ¶¶ 24, 25). On that date, although Nesby was present in the residence, McManus handled the transaction (Doc. 72, ¶¶ 26, 27).

Keibler arranged another transaction with McManus for January 6, 2016, so Ingram petitioned the Perry County court for another eavesdropping Order that included Nesby, McManus and Keibler as Nesby was now staying at the residence (Doc. 72, ¶¶ 30, 46). Again, Ingram drafted the CI Black affidavit that was submitted in support of the petition, and which was signed by Keibler as Tori Black (Doc. 72, ¶¶ 31, 35-37). Later that day, an audio recording device was concealed on Keibler, he was given funds to purchase cocaine, and he was transported to McManus' residence (Doc. 72, ¶¶ 46-50). Visual surveillance was observing McManus' residence, and Keibler was seen leaving the residence and returning to the rendezvous point where he was picked up by investigators, searched, and transported to DuQuoin Police Department where he turned over a bag of white powder (Doc. 72, ¶¶ 51- 55).

Another drug transaction was set for January 8, 2016 and the same procedures were followed regarding searching Keibler prior to the meet, providing him funds, concealing a recording device and transporting to the meet location while under video surveillance (Doc. 72, ¶¶ 57, 59). Following the transaction, Keibler returned to the rendezvous location under surveillance, the recording was ended, and he was taken back

to the DuQuion Police Department where he turned over a small baggy that contained a white powdery substance (Doc. 72, ¶¶ 61). Officers were able to listen to the audio tapes of both transactions, and Keibler advised that he received the substance from Nesby on January 6, 2016 and January 8, 2016 (Doc. 63-2, pp. 17-19).

On February 25, 2016, Nesby was arrested, and via an amended information dated April 26, 2016, was charged with two counts of unlawful delivery of a controlled substance for January 6, 2016 and January 8, 2016 respectively (Doc. 72, ¶ 71). Following a preliminary hearing, a judge determined there was sufficient probable cause that Nesby committed the two offenses (Doc. 72, ¶¶75). A jury trial ensued and Nesby was acquitted on both counts.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted). "A genuine dispute as to any material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Kvapil v. Chippewa Cty.*, 752 F.3d 708, 712 (7th Cir. 2014) (citation and internal quotation marks omitted). In deciding whether a dispute exists, the Court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party."

*Truckers Cas. Co.*, 796 F.3d 717, 723 (7th Cir. 2015) (citation omitted). The Court's job as to "a summary judgment motion is not to weigh evidence, make credibility determinations, resolve factual disputes and swearing contests, or decide which inferences to draw from the facts." *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014).

Under Rule 56, the movant has the initial burden of establishing that a trial is not necessary. *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). "That burden may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Id.* (citation and internal quotation marks omitted). If the movant carries this burden, the nonmovant "must make a showing sufficient to establish the existence of an element essential to that party's case." *Id.* (citation and internal quotation marks omitted). The nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in [their] favor." *Id.* (citation and internal quotation marks omitted). "The existence of a mere scintilla of evidence, however, is insufficient to fulfill this requirement." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008). "[S]peculation and conjecture" cannot defeat a motion for summary judgment. *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In addition, not all factual disputes will preclude the entry of summary judgment, only those that "could affect the outcome of the suit under governing law." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (citation omitted).

In deciding the motion, the Court cannot weigh conflicting evidence, assess the credibility of the witnesses, choose between competing inferences or determine the ultimate truth of the matter, as these are functions of the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCottrell v. White*, 933 F.3d 651, 657 (7th Cir. 2019). Instead, the Court's sole function is "to determine whether there is a genuine issue for trial." *Tolan v. Cotton*, ⸺ U.S. ⸺, 134 S.Ct. 1861, 1866, (2014). It must view all the evidence in the record in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *McCottrell,* 933 F.3d at 658.

## ANALYSIS

### Count 1 – Fourth Amendment Claim

In Count 1 of the amended complaint, Nesby asserts that Ingram and Schmanski violated his rights under the Fourth Amendment when they arrested him and subsequently detained him because they did not have probable cause to do so (Doc. 41). Specifically, Nesby claims the arrest and detention were based on falsified documents and fabricated evidence (*Id.*).

The Fourth Amendment establishes the minimum constitutional "standards and procedures" not just for arrest, but for "detention". *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975). It prohibits government officials from detaining a person in the absence of probable cause. *Id.* The Fourth Amendment also protects against unreasonable seizures; a person is seized whenever officials restrain his freedom of movement such that he is not free to leave. *Brendlin v. California,* 551 U.S. 249, 254 (2007). In other words, an

arrest is a seizure of a person, so it must be reasonable under the circumstances. *District of Columbia v, Wesby,* 138 S.Ct. 577, 586 (2018).

It is important to note that the Fourth Amendment does not forbid all or even most seizures – only unreasonable ones. *Torres v. Madrid,* 141 S.Ct. 989 (2021). "[T]he general rule [is] that Fourth Amendment seizures are 'reasonable' only if based on probable cause to believe that the individual has committed a crime". *Manuel v. City of Joliet, Ill.,* 137 S.Ct. 911, 918 (2017) (citing *Bailey v. United States,* 568 U.S. 186, 192 (2013).

Probable cause is an absolute defense to any claim under § 1983 against police officers for wrongful arrest, false imprisonment [unlawful detention] or malicious prosecution. *Chelios v. Heavener,* 520 F.3d 678, 685 (7th Cir.2008); *Mustafa v. City of Chicago,* 442 F.3d 544 (7th Cir. 2006). Probable cause "is not a high bar". *Kaley v. United States,* 134 S.Ct. 1090, 1103 (2014).

Courts look to all of the facts and circumstances known to the officer *at the time* of the arrest to determine whether the officer had probable cause to make an arrest. *Abbott v. Sangamon County,* 705 F.3d 706, 714 (7th Cir. 2013) (*emphasis added*). A probable cause determination is an objective inquiry. *Whren v. United States,* 517 U.S. 806, 813 (1996). It is a fluid concept that relies upon the common-sense judgment of the officers based on the totality of the circumstances. *United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006). Probable cause deals with probabilities, not hard certainties. *Illinois v. Gates,* 462 U.S. 213, 231 (1983). It requires more than a hunch, but not necessarily a finding that it was more likely than not that the arrestee was engaged in criminal activity – the officer's belief that the arrestee was committing a crime need only be

reasonable. *Henry v. United States*, 361 U.S. 98 (1959). In fact, the officer's belief need not be "correct or even more likely true than false, so long as it is reasonable." *Fleming,* 674 F.3d at 878-879.

Nesby asserts that the affidavits were false and fabricated, but he has not proven "by a preponderance of the evidence" that the affidavits contained such false statements or omissions to negate the finding of probable cause. *See U.S. v. Williams,* 718 F.3d 644, 650 (7th Cir. 2013). Furthermore, Nesby cannot establish that either officer was deliberately or recklessly trying to mislead the issuing judge or that there was no probable cause without the affidavit from Keibler. Nesby's allegations are nothing more than smoke and mirrors; they do not rise to the level of a material fact nor do they obviate probable cause. To the contrary, Nesby's claims that he conveyed BC powder and not cocaine are an admission to committing a criminal offense, to wit, unlawful delivery of a look-alike substance. 720 ILCS 570/404(b).

As hereinbefore demonstrated, probable cause to arrest can be based upon the commission of *any* offense. *Abbott,* 705 F.3d at 713-14. Probable cause is an absolute defense to any § 1983 claim for false arrest. *Id.* Probable cause exists when the facts and circumstances within the officer's knowledge would warrant a reasonable person to believe that the arrestee committed, is committing, or is about to commit an offense. *Id.* at 714; see also *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979).

Although the determination of probable cause is usually a question of fact decided by the jury, if the underlying facts are undisputed, the court can make that decision on summary judgment. *Id*. In this case, the facts are clear and uncontroverted that the officers had probable cause to believe Nesby committed a criminal offense. Nesby was

in McManus' residence on December 16, 2015 and was not charged with any offense on that date. He was also present on January 6, 2016 and January 8, 2016 and admitted to taking part in transactions on those dates with "Tori Black". Whether the transaction involved BC Powder or cocaine is irrelevant, probable cause existed that a criminal offense transpired. As such, summary judgment is appropriate with respect to Count 1.

**Count 3 – Fourteenth Amendment Claim**

In Count 3 of his amended complaint, Nesby claims that Ingram and Schmanski discriminated against him because of his race (Doc. 41). According to Nesby, they arrested, detained and prosecuted him because he was an African-American man (*Id.*).

The Equal Protection Clause of the Fourteenth Amendment, ratified to help protect the equality that had been won in the Civil War, is most familiar as a guard against state and local government discrimination on the basis of race, national origin, sex, and other class-based distinctions. *E.g., Loving v. Virginia,* 388 U.S. 1, 8–12 (1967). In other words, the Fourteenth Amendment prohibits intentional discrimination based on membership in a particular class. *Trigg v. Fort Wayne Cmty. Schs.,* 766 F.2d 299, 300 (7th Cir. 1985). To plead an equal protection claim, a plaintiff must allege that "(1) he is a member of a protected class, (2) he was similarly situated to individuals not of the protected class, (3) he was treated differently than those similarly-situated individuals, and (4) those who treated him differently acted with discriminatory intent." *Brown v. Ill. Dep't of Pub. Aid*, 318 F. Supp. 2d 696, 699 (N.D. Ill. 2004).

Nesby successfully pleaded a cause of action, but at summary judgment, a plaintiff cannot rest upon the mere allegations or denials of his pleading; he must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 247 (1986). "A person bringing an action under the Equal Protection Clause must show intentional discrimination against him because of his membership in a particular class, not merely that he was treated unfairly." *Trautvetter v. Quick*, 916 F.2d 1140, 1150 (7th Cir. 1990).

Nesby does not assert any facts or evidence to support his claims that Ingram and Schmanski acted with discriminatory intent. Discriminatory intent may not be shown simply by a conclusory allegation but "instead, [a] plaintiff must offer 'facts that might plausibly support' the discriminatory link." *Cole v. Bd. of Trs. of N. Ill. Univ.*, 38 F. Supp. 3d 925, 933 (N.D. Ill. 2014) (quoting *Sung Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 832–33 (7th Cir. 2012)).

We know that Nesby is an African-American male and McManus is a Caucasian female, but that is not enough to establish a violation of the Fourteenth Amendment. As a general rule, whether individuals are similarly situated is a factual question for the jury; however, a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met. *See Harlen Assoc. v. Vill. of Mineola,* 273 F.3d 494, 499 (2d Cir.2001)*; Bell v. Duperrault,* 367 F.3d 703, 709–10 (7th Cir. 2004)(affirming district court's grant of summary judgment where the plaintiff failed to raise a triable issue as to whether he was "similarly situated" to comparators). It is clear that similarly situated individuals must be very similar indeed. *Purze v. Vill. of Winthrop Harbor,* 286 F.3d 452, 455–56 (7th Cir.2002) (holding that in order to be considered "similarly situated," comparators must be "*prima facie* identical in all relevant respects").

Yes, McManus was allowed to plead to a lesser offense for probation, but that is not conclusive in and of itself because the prosecution, not the police, negotiate plea deals. We do not know their backgrounds and/or criminal histories or the totality of the evidence against them, and those are not material facts to this claim as the plea determination was not handled by Ingram or Schmanski. Further, Nesby's bare allegations, without more, are not enough to show that McManus is similarly situated.

The Seventh Circuit has also recognized equal protection claims brought by a "class of one", although it is difficult to succeed with such a claim. *McDonald v. Village of Winnetka,* 371 F.3d 992, 1001 (7t Cir. 2004). A class of one equal protection claim may be brought where (1) the plaintiff alleges that he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendant. *See Vill. of Willowbrook v. Olech,* 528 U.S. 562, 564, (2000); *Nevel v. Vill. of Schaumburg,* 297 F.3d 673, 681 (7th Cir.2002).

Nesby suffers from the same short-comings in that he has not shown that McManus is similarly situated nor has shown that there is no rational basis for the difference in the treatment. Again, just because Nesby and McManus were charged with same offense does not make them similarly situated and there could be a rational basis for the difference in treatment because we do not know McManus' background, criminal history, or the strength of her case. Furthermore, Nesby has not shown any animus toward him by Ingram or Schmanski because of his race. Consequently, summary judgment is appropriate with respect to Count 3.

**Count 4 – Civil Conspiracy Claim**

Nesby alleges ¶ 1983 civil conspiracy against Ingram and Schmanski in Count 4 of his amended complaint (Doc. 41). Specifically, Nesby argues that they conspired to falsify documents and fabricate evidence to arrest, detain and prosecute him on drug charges (*Id.*).

Under both Section 1983 and Illinois law, civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, "the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Cooney v. Casady*, 735 F.3d 514, 519 (7th Cir. 2013). In general, to establish a prima facie case of civil conspiracy, a plaintiff must show: (1) an express or implied agreement among defendants to deprive plaintiff of his constitutional rights; and, (2) actual deprivations of those rights in the form of overt acts in furtherance of the agreement. *Scherer v. Balkema,* 840 F.2d 437, 441 (7th Cir. 1988). An express agreement among the conspirators is not necessary; the participants must simply share the same general conspiratorial objective. *Id.* Direct proof of such an agreement, however, is rarely available since conspiracies are by their very nature secretive. *See Beaman v. Freesmeyer*, 776 F.3d 500, 511 (7th Cir. 2015). Accordingly, the existence of a conspiracy may be inferred through the combination of common sense and circumstantial evidence. *Beaman* 776 F.3d at 511; *Adcock v. Brakegate, Ltd.*, 164 Ill.2d 54 (1994).

Nesby makes blanket allegations but cannot satisfy either element. He has not provided a scintilla of evidence, even circumstantially, of any sort of agreement between Ingram and Schmanski. Nesby has not pointed to anything that could support the

inference of an agreement between Ingram and Schmanski to deprive Nesby of his constitutional rights. Nesby also cannot show any deprivation of rights because there was probable cause for the arrest.

A conspiracy claim cannot survive summary judgment based on vague conclusory allegations that include no overt acts reasonably related to promoting the conspiracy. *Amundsen v. Chicago Park Dist.,* 218 F.3d 712, 718 (7th Cir.2000). As such, summary judgment is appropriate as to Count 4 of the Amended Complaint.

**Count 6 – Illinois Malicious Prosecution Claim**

In Count 6 of the amended complaint, Nesby asserts the Illinois claim of malicious prosecution against Ingram, Schmanski and the city of DuQuoin (Doc. 41). Specifically, Nesby alleges they falsified documents and fabricated evidence to arrest, detain and prosecute him for drug crimes (*Id.*).

In order to prevail on a claim of malicious prosecution under Illinois law, the plaintiff must establish: (1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) malice; and (5) damages. *Swick v. Liautaud,* 169 Ill.2d 504, 512 (1996). All of these elements must be established; the failure to establish even one element will preclude recovery for malicious prosecution. *Washington v. Summerville,* 127 F.3d 552, 557 (7th Cir. 1997). Furthermore, probable cause is complete defense to a claim for malicious prosecution. *Logan v. Caterpillar, Inc.* 246 F.3d 912, 926 (7th Cir. 2001).

Summary judgment is proper when based upon the existence of probable cause *for the same offense. Holmes v. Village of Hoffman Est.,* 511. F.3d 673, 684 (7th Cir. 2007)

(*emphasis added*). Ingram and Schmanski had probable cause to arrest Nesby for drug transactions that occurred on January 6, 2016 and January 8, 2016, and those are the same two offenses for which he was prosecuted. Probable cause is "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *Fabiano v. City of Palos Hills*, 336 Ill.App.3d 635 (1st Dist. 2002). In a malicious prosecution claim, probable cause is determined based upon the facts known to the prosecution at the time of filing, "not the actual facts of the case or the guilt or innocence of the accused." *Sang Ken Kim,* 306 Ill.Dec. 772, 858 N.E.2d at 574.

Indeed, Nesby has no trouble satisfying the first two elements. He was charged with two counts of unlawful delivery of a controlled substance and he was acquitted of both counts, which is clearly in his favor. Nesby also raises the issue of damages, in that he missed the birth of his child, and that his father endured chemotherapy while he was incarcerated and awaiting trial. Notwithstanding the forgoing, summary judgment must be granted with respect to this count based upon the third element – there was probable cause.

### Count 7 – Illinois Intentional Infliction of Emotional Distress Claim

In Count 7 of the amended complaint, Nesby asserts the Illinois claim of intentional infliction of emotional distress against Ingram, Schmanski and the City of DuQuoin (Doc. 41). Specifically, Nesby alleges their conduct was extreme and outrageous by falsifying documents and fabricating evidence to arrest, detain and prosecute him for drug crimes causing him extreme emotional distress (*Id.*).

Under Illinois law, "[t]he tort of intentional infliction of emotional distress requires proof of four elements: (1) extreme and outrageous conduct; (2) intent or recklessness to cause emotional distress; (3) severe or extreme emotional distress suffered by the plaintiff; and (4) actual and proximate causation of the emotional distress by defendant's outrageous conduct." *Sornberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006) (citing *Pub. Fin. Corp. v. Davis*, 66 Ill.2d 85, 89 (Ill. 1976)).

First, the nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be considered intolerable in a civilized community. *Honaker v. Smith,* 256 F.3d 477, 490 (7th Cir.2001) quoting *McGrath,* 125 Ill.2d at 85. "Extreme and outrageous" conduct does not include " 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' *Id.*

Nesby reiterates his prior position that there was no probable cause and that his arrest was based upon false affidavits and evidence to support that the officers' conduct was extreme and outrageous; however, his argument is unsubstantiated and there he has not provided any evidence to support his claims. The Court judges whether conduct is extreme and outrageous on an objective standard based on all the facts and circumstances of a particular case. *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7t Cir. 1993). This Court has determined that Ingram and Schmanski had probable cause and does not find that their conduct was extreme and outrageous. As such, summary judgment is appropriate on Count 7.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Motion for Summary Judgment in its entirety. This action is **DISMISSED with prejudice** and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: September 20, 2021**

/s/ Stephen P. McGlynn
**STEPHEN P. McGLYNN**
**U.S. District Judge**
